# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDO SANCHEZ,<br><br>            Plaintiff,<br><br>     v.<br><br>HARTFORD LIFE & ACCIDENT<br>    INSURANCE CO.; and<br>DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 2:20-cv-03732-JWH-JEM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |

# I.  INTRODUCTION

This case concerns an ERISA claim that Plaintiff Bernardo Sanchez asserts against Defendant Hartford Life & Accident Insurance Co., through which Sanchez seeks short-term and long-term disability benefits.  Sanchez was an employee of non-party Illinois Tool Works Inc. ("ITW").  ITW's disability benefits plans were administered by non-party Aetna Life Insurance Company ("Aetna").  Defendant Hartford acquired Aetna's group benefits business in late 2017.  In connection with that transaction, Aetna appointed Hartford as its attorney-in-fact to administer claims under certain Aetna group plans, including the plan at issue in this litigation.  Accordingly, references herein to "Hartford" refer to Hartford acting on behalf of Aetna as its attorney-in-fact.

This matter was tried in this Court on July 27, 2021.  The issues presented for adjudication were as follows:

1.     Did Aetna abuse its discretion when it denied Sanchez's claim for short term disability benefits?

2.     Is Sanchez is entitled to long term disability benefits?

For the reasons set forth below, the Court answers "no" to both questions.

## II.  FINDINGS OF FACT[1]

### A.    The Self-Funded STD Plan

1.     ITW operates two separate and distinct employee welfare benefits plans governed by ERISA:  a self-funded short-term disability plan (the "STD Plan") and an insured long-term disability plan (the "LTD Plan").

2.     Because the STD Plan is self-funded, ITW pays benefits under the terms, conditions, and limitations of the Plan.  In contrast, ITW's LTD Plan is fully insured through a policy issued by Aetna.

---

[1]     To the extent that any of the Findings of Fact herein are considered Conclusions of Law, they are adopted as such.  Likewise, to the extent that any of the Conclusions of Law in Part III are considered Findings of Fact, they are adopted as such.

3.     Aetna is the claim administrator under both the STD Plan and the LTD Plan.

4.     The STD Plan grants to Aetna discretionary authority to interpret plan terms and to determine eligibility for, and entitlement to, benefits.

5.     The STD Plan states: "You will be considered disabled while covered under the ITW STD Plan on the first day that you are disabled as a direct result of a significant change in your physical or mental condition caused by a non-occupational illness or injury."

6.     The STD Plan provides coverage for only non-occupational illness or injury.

7.     The STD Plan defines "occupational" illness or injury broadly as that which "[a]rises out of (or in the course of) any activity in connection with employment . . . ."

8.     A significant difference between the Plans is that while the STD Plan covers only non-occupational illness or injury, the LTD Plan covers both occupational and non-occupational illness or injury.

9.     The STD Plan provides benefits for a maximum benefit duration of 26 weeks after a seven-day waiting period.

10.     Other income, such as social security benefits, are deducted from the gross monthly benefit.

11.     To submit a claim under the STD Plan, the participant must give "proof of the nature and extent" of the disability.  The Test of Disability is as follows:

> From the date that you first become disabled, you meet the test of disability on any day that:
>
>> You cannot perform the material duties of your own occupation solely because of an illness, injury, or disabling pregnancy-related condition.

-3-

You are not performing the material duties of your own occupation if you are only performing some of the material duties of your own occupation.

12.     The LTD Plan has very different features from the STD Plan. Those differences include the following:  a 180-day waiting period; coverage for occupational illness or injury; a different definition of disability; a disability test change after 24 months to disability from "any reasonable occupation"; a 24-month benefit limitation for psychiatric condition; and varying offsets and limitations.

13.     Because the terms of the STD Plan and the LTD Plan are materially different, the fact that a claim is payable or not payable under one plan does not necessarily mean the claim is payable or not payable under the other.

**B.    The Claimant**

14.     Plaintiff Bernardo Sanchez lives in Ventura County, California.  He served as a Corporal in the United States Marine Corps during Operation Desert Storm in 1990.  He is a decorated Marine, and he was honorably discharged in 1994.  After Sanchez completed his enlistment, he earned his B.S. in Public Relations with a minor in Business.

15.     Sanchez worked essentially the same job for 23 years, but, as a result of multiple corporate buyouts, Sanchez's employment with ITW began in 2011.  ITW specializes in the manufacture of automotive service products. Sanchez served as regional sales manager, and he was responsible for selling ITW products and for maintaining existing distributor relationships and securing new ones.  Sanchez's job activities were sedentary, requiring mostly sitting and occasionally standing or walking.  His job also required frequent travel.

16.     While working at ITW, Sanchez believed that he was exposed to a hostile work environment.  He received hostile work emails from his supervisor

regarding his job performance, and he concluded that his supervisor was trying to force him to quit.

**C.     The STD Claim for Symptoms of PTSD and Anxiety Arising Out of a Hostile Work Environment**

17.     Sanchez made a claim for disability under the STD Plan for symptoms of post-traumatic stress syndrome and anxiety exacerbated by a hostile work environment.

18.     On February 1, 2019, through the Department of Veterans Affairs (the "VA"), Sanchez saw Erica Espinoza, N.P., who reported diagnoses of PTSD and anxiety.  Nurse Practitioner Espinoza wrote the following in Sanchez's medical record:

> [W]orsening PTSD and hostile work environment r/t supervisor interactions x 1 yr that is causing pt to have a "short fuse".  Has worked for company x 21 years.  Reports having panic attacks on plane when reading an email from supervisor.  Emails are hostile and "personal attacks" with negative feedback.  Gets startled and anxious every time he hears a ping on his phone notifying him that he has a new email.  States that supervisor is discriminating and singling him out—making him loose [*sic.*] his confidence.  Pt feels weak.  He feels that his supervisor is trying to make him quit.  Pt states "he can't do the job anymore"  . . .  Pt states that he is "terrified of HR"  He "doesn't trust company or HR" . . . .

19.     Sanchez submitted a claim to Aetna under the STD Plan with a medical note from Nurse Practitioner Espinoza that Sanchez was out of work for six days, from February 1 to 7, 2019.  Sanchez made that claim within the STD Plan's seven-day waiting period.

20.     The next week, Nurse Practitioner Espinoza transmitted to Aetna a letter extending Sanchez's disability—for PTSD—until April 1, 2019.  In her

1  letter, Nurse Practitioner Espinoza provided no additional clinical support for

2  the extension.

3        21.     The medications that Sanchez was taking were unrelated to his

4  PTSD.

5  **D.     Denial of the STD Claim Due to the Lack of Treating Records,**

6          **Mental Status Evaluation, or Observable Symptoms on Examination**

7        22.     Aetna referred the claim to its behavioral health unit for

8  assessment.  The clinical case manager, Maria Villalba, determined that the

9  claim information failed to evidence observable symptoms and global

10  impairment.  Ms. Villalba advised that, at a minimum, mental health records of

11  observable examination findings and a mental status evaluation ("MSE") were

12  required to assess the severity of Sanchez's condition, the extent of his

13  functional impairment, and whether his symptoms were global in nature or

14  specific to the work environment—*i.e.*, occupational in nature.

15        23.     In February and March 2019, Aetna asked Sanchez, Nurse

16  Practitioner Espinoza, and the VA to complete behavioral health clinician

17  statements and to provide records of a February 13, 2019, mental health

18  appointment previously noted by Nurse Practitioner Espinoza, as well as any

19  other supporting medical records or progress notes.

20        24.     Aetna, however, received no MSE or treating records pertaining to

21  Sanchez's alleged disability.

22        25.     On March 19, 2019, Aetna denied the claim because Sanchez did

23  not meet the policy definition of "disability."  Aetna noted that it received

24  insufficient medical evidence of observable findings and behaviors that would

25  prevent Sanchez from working.  Aetna identified the medical documentation

26  that would be needed to support Sanchez's claim, such as a detailed narrative

27  report outlining physical or mental restrictions and limitations, physician

28  progress notes including course of treatment, frequency of visits, specific

medications prescribed for the condition, and copies of diagnostic tests and clinical findings.

**E.      Request for Reconsideration and Affirmance of Denial Based Upon Insufficient Medical Evidence**

26.      Sanchez sought the reconsideration of his claim, noting that a "hostile work environment has made my life nearly impossibly [*sic*]."

27.      Dr. Yaniv Simon, a VA attending psychiatrist, provided a letter stating that Sanchez had trouble interacting with coworkers and supervisors. Dr. Simon noted that Sanchez was diagnosed with PTSD, that Sanchez had received care at the VA for the past three years, and that Sanchez received unspecified "medications and counseling." Dr. Simon also stated that Sanchez experienced difficulties following a schedule and sleeping, trouble at work, a depressed mood, and significant anxiety. Dr. Simon included no medical records, progress notes, or mental health examination results with her letter.

28.      Aetna agreed to reconsider its decision. It asked Dr. Simon to complete a behavioral health clinician statement and to provide medical records of care, but Sanchez provided no additional information.

29.      On June 24, 2019, Aetna notified Sanchez that, based upon its further review, Sanchez did not meet the definition of "disability" under the policy. Aetna again offered to review supporting information, such as observable exam findings and an MSE to assess function. Aetna asked for clarification regarding whether the condition was global, because Nurse Practitioner Espinoza's records suggested that Sanchez's condition was work related, as Sanchez had worked for the same company for more than 21 years before he claimed disability due to his pre-existing PTSD.

**F.      STD Administrative Appeal**

30.      On or about September 6, 2019, Sanchez appealed Aetna's denial of his claim. Sanchez informed Aetna that his doctor did not expect him to

return to work and that he was "terminated . . . due to that fact." Sanchez stated that psychologist Dr. Barbara Weismann diagnosed Sanchez with PTSD, but that information was not readily available through the VA system.

31.    Together with Sanchez's appeal, Aetna received a VA PTSD disability benefits questionnaire completed by psychiatrist Dr. Eulogio Eclerinal. Dr. Eclerinal evaluated Sanchez for PTSD on August 4, 2019. Dr. Eclerinal noted that Sanchez had been diagnosed with PTSD, and she certified total occupational and social impairment to the VA based upon Sanchez's self-reported symptoms. Dr. Eclerinal noted that Sanchez sought counseling once per month and that Sanchez had a prescription for Prazosin. Dr. Eclerinal noted Sanchez's self-reported temper, rage, and panic attacks related to work.

32.    Aetna also received a March 22, 2019, behavioral health clinician statement by Nurse Practitioner Espinoza and a VA disability certification. Nurse Practitioner Espinoza opined that Sanchez was unable to perform functional activities due to his PTSD and anxiety caused by his conflict with his supervisor. Nurse Practitioner Espinoza believed that Sanchez's PTSD was "caused and/or aggravated" by his work.

33.    Nurse Practitioner Espinoza also noted no psychotic symptoms. She found that Sanchez's speech, hygiene, and dress were all normal.

34.    Nurse Practitioner Espinoza found that Sanchez could volunteer full-time or part-time with no modifications and could participate in rehabilitation counseling.

35.    In a disability certification form, Nurse Practitioner Espinoza clarified that Sanchez's PTSD was caused and/or aggravated by his specific employment.

36.    Aetna obtained the ITW job description for Sanchez's position.

37.     Aetna retained an independent, board-certified psychologist, Dr. Avila Steele, Ph.D., to review the records and to assess Sanchez's condition and level of impairment.

38.     In Dr. Steele's October 6, 2019, report, she concluded that there was a lack of evidence to support functional impairment.  While acknowledging that Sanchez was diagnosed with generalized anxiety, PTSD, and depression, Dr. Steele reported that "[t]he available information lacks compelling evidence and exam data that describes functional impairments of sufficient intensity and severity as to preclude the claimant from engaging in previous activities, or returning to functional capacity of 40 hours weekly and 8 hour days."

39.     Dr. Steele found no reports of mental status abnormalities, cognitive deficits, the inability to complete activities of daily living, or the inability to drive and travel.  She noted that Sanchez's symptoms were described as specific to the environment and not global in nature.

40.     Dr. Steele twice attempted peer-to-peer consultations with both Dr. Simon and Nurse Practitioner Espinoza, but neither answered nor returned Dr. Steele's calls.

41.     Aetna transmitted Dr. Steele's report to Nurse Practitioner Espinoza and Dr. Simon for comment and with specific questions to clarify the condition, the nature and extent of treatment, the medications, and the referral to a higher level of psychiatric care.  Neither Nurse Practitioner Espinoza nor Dr. Simon responded.

42.     Aetna notified Sanchez of the lack of response from Dr. Simon and Nurse Practitioner Espinoza, and it afforded him 21 days to provide additional information.  Aetna received no response.

43.     On November 12, 2019, Aetna affirmed its decision on appeal on the basis that Sanchez did not meet the STD Plan's definition of "disability."  Aetna noted a lack of clinical findings to support Sanchez's alleged inability to

1  work and remarked that Sanchez's condition appeared specific to his work

2  environment rather than global in nature.

3        44.    In view of Sanchez's exhaustion of his administrative remedies,

4  Aetna closed Sanchez's claim.

5        45.    Sanchez retained counsel who, on March 18, 2020, submitted

6  additional records to be included in the administrative record and considered by

7  Aetna with regard to an LTD claim.

8        46.    On April 14, 2020, Aetna's appeal specialist advised Sanchez's

9  counsel that the STD claim was closed but that Aetna would forward the

10  correspondence (and enclosures) to the LTD unit to respond to the request.

11  **G.    Post-STD Lawsuit for Benefits and Attorneys' Fees**

12        47.    On April 21, 2020, Sanchez's counsel filed this lawsuit on behalf of

13  Sanchez for benefits and attorneys' fees.  In his Complaint, Sanchez sought both

14  STD benefits and LTD benefits, even though Aetna never made a decision

15  under the LTD Plan.

16        48.    On May 12, 2020, Aetna transmitted to Sanchez an LTD

17  application, including updated medical record authorizations for Sanchez to

18  complete and return.  Rather than complete the application and authorizations,

19  Sanchez's counsel responded to Aetna's counsel that Sanchez would not file an

20  LTD claim because it would be futile.

21        49.    On May 27, 2020, Aetna made a final request for Sanchez to

22  complete the forms and to return them by June 12, 2020, in order for Sanchez to

23  claim LTD benefits.

24        50.    On June 11, 2020, Aetna followed up with a letter advising Sanchez

25  that it had closed the LTD claim because it did not receive further information,

26  but Aetna offered to reopen the claim if Sanchez submitted an LTD application.

27  Sanchez did not submit an LTD application.

28

## III.  CONCLUSIONS OF LAW

### A.    Standard of Review

The standard of review for the STD Claim is abuse of discretion.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1136 (9th Cir. 2017).  Aetna's decision to deny benefits to Sanchez under the STD Plan cannot be disturbed unless that decision was arbitrary and capricious.  *See Firestone*, 489 U.S. at 109.  The Court cannot "substitute its judgment for that of the administrator unless the latter's decision was clearly erroneous in light of the available record."  *Voight v. Metropolitan Life Ins. Co.*, 28 F. Supp. 2d 569, 579 (C.D. Cal. 1998).  For the reasons stated below, however, the Court's decision would be the same under a *de novo* standard of review.

Sanchez bears the burden to prove his entitlement to benefits.  *See Muniz v. Amec Const. Mgmt. Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).  Sanchez must prove that the evidence available to Aetna during its review of the STD claim establishes disability within the meaning of the STD Plan's definition of disability, from a non-occupational illness or injury.  Sanchez must prove that Aetna's decision to deny benefits was clearly erroneous in light of the available record.

### B.    The Medical Evidence Fails to Establish that Sanchez Meets the Definition of "Disability" Under the Terms of the STD Plan

To be eligible for benefits, Sanchez must prove a condition of sufficient severity that it requires restrictions and limitations preventing him from performing his occupation.  *See Muniz*, 623 F.3d 1290; *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1232 (N.D. Cal. 2003).  A mere diagnosis does not establish disability.  *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), *overruled on other grounds as recognized by Salomaa v. Honda Long Term Disability Plan*, 642 F.3d

666, 673-74 (9th Cir. 2011); *see also Voight v. Metropolitan Life Ins. Co.*, 28

F. Supp. 2d 569, 578 (C.D. Cal. 1998); *Seleine v. Fluor Corp.*, 598 F. Supp. 2d

1090 (C.D. Cal. 2009), *aff'd* 409 F. App'x 99 (9th Cir. 2010).

Simply claiming symptoms does not prove "disability," which requires

functional impairment.  Subjective self-reporting of symptoms is not a solid basis

for a disability claim.  *See Langlois v. Metropolitan Life Ins. Co.*, 2012 WL 1910020

(N.D. Cal. May 24, 2012); *Martucci v. Hartford Life & Acc. Ins. Co.*, 863

F. Supp. 2d 269, 278 (S.D.N.Y. 2012).  A subjective claim requires support from

testing, data, and treatment to establish functional impairment.  *See Western v.*

*Unum Life Ins. Co. of America*, 2018 WL 6071090, at *12 (C.D. Cal. July 3, 2018),

*aff'd* 798 F. App'x 154 (9th Cir. 2020).

Courts should not, however, require "objective proof" of conditions that

are inherently subjective.  *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d

623, 635 (9th Cir. 2009); *see also Hagerty v. Am. Airlines Long Term Disability*

*Plan*, 2010 WL 3463620, at *2 (N.D. Cal. Sept. 3, 2010) ("requiring objective

medical evidence of fatigue, when The Plan documents do not expressly require

such proof, is a factor suggesting The Plan abused its discretion"); *Cook v.*

*Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 21 (1st Cir.2003) (requiring

objective documentation of Chronic Fatigue Syndrome is unreasonable).

The fact that a treating physician certifies or supports disability need not

be given special weight.  *See Black & Decker Disability Plan v. Nord*, 538 U.S.

822, 834 (2003).  Even under *de novo* review, factors to assess the credibility of a

treating physician include the extent of the patient's treating history, the

doctor's specialization (or lack thereof), and the amount and strength of the

detail that the doctor provides for his or her conclusion.  *See Shaw v. Life Ins. Co.*

*of N. Am.*, 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015).  "A physician's opinion

is more credible when supported by medical and vocational evidence of

contemporaneous functional limitations."  *Graham v. First Reliance Standard*

*Life Ins. Co.*, 2007 WL 2192399, at \*2 (S.D.N.Y. July 31, 2007).  By contrast, a treating physician's diagnosis can be discounted when it lacks supportive evidence, it is contradicted by other statements and assessments of medical condition, and it is based upon subjective descriptions of pain or limitations.  *See Calcagno v. Unum Life Ins. Co. of America*, 2019 WL 2488716, at \*15 (D. Or. Feb. 19, 2019) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)).

Here, it is undisputed that Sanchez was diagnosed with anxiety and PTSD sustained from his experiences in Operation Desert Storm.  Mere diagnoses, however, are insufficient to conclude that Sanchez is totally disabled from performing essential duties as a sales manager in 2019.  Sanchez worked for more than two decades after he sustained PTSD.  He worked for three years at ITW after his PTSD diagnosis in 2016.

Diagnoses or conclusory statements from providers are insufficient to establish "disability" under the definition of the STD Plan.  Sanchez must prove that he was totally and functionally disabled—unable to perform the material duties of his occupation.  *See, e.g.*, *Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1100 (C.D. Cal. 2009), *aff'd* 409 F. App'x 99 (9th Cir. 2010).  Here, however, Aetna officials reasonably determined that Sanchez presented insufficient medical evidence to establish functional impairment.  On multiple occasions, Aetna requested medical records—beyond mere diagnoses and certification—to support a finding of functional impairment.  In addition, Aetna specified the type of records that could demonstrate the extent and severity of a disability; *e.g.*, treating records, progress notes, observable symptoms on examination, or an MSE.  Those records could have provided information of medications, consistent treatment, restrictions, and limitations.  Despite those specific requests, neither Sanchez nor any of his caregivers provided such medical evidence to support a finding of disability.

1   The Court notes that during the trial, Sanchez's counsel blamed the VA for its
2   failure to respond to Aetna sufficiently and that the administrative record shows
3   that placing such blame on the VA is not unreasonable.  Nevertheless, the VA is
4   not on trial here.

5          The records and statements from Nurse Practitioner Espinoza,
6   Dr. Simon, and Dr. Eclerinal do not weigh heavily.  There is no evidence to
7   demonstrate that those health care providers treated Sanchez on a consistent
8   basis.  Their opinions are based upon Sanchez's self-reported symptoms.  They
9   do not submit treating records of observable symptoms on examination,
10  standard mental health evaluation, or contemporaneous therapy records.  The
11  Court is sympathetic to the argument from Sanchez's counsel at trial that PTSD
12  is not an objective condition for which one can do objective testing.  Aetna is,
13  however, entitled to expect evidence such as contemporaneous therapy records.

14         Other reasons also exist that cause the Court to discount the records and
15  statements from Nurse Practitioner Espinoza, Dr. Simon, and Dr. Eclerinal:

16  • Nurse Practitioner Espinoza did not consistently treat Sanchez.  Her
17    office visit note demonstrates Sanchez's functionality.  She provided no
18    specific restrictions or limitations of work duties but found that Sanchez
19    could participate in volunteer activities with no restrictions, and she
20    recommended him for rehabilitation counseling.

21  • Dr. Simon's opinion is unsubstantiated.  Dr. Simon submitted a
22    conclusory letter certifying disability with no detail of any MSE,
23    examination findings or results, or contemporaneous medical records.
24    Dr. Simon reported that Sanchez underwent counseling for the prior
25    three years, but he provided no details regarding the frequency of
26    treatment, therapy records, or records of medications prescribed.

27
28

- Additionally, neither Nurse Practitioner Espinoza nor Dr. Simon responded to Dr. Steele and Aetna's multiple attempts to obtain their opinions regarding Dr. Steele's report.

- Finally, Dr. Eclerinal noted that Sanchez received counseling at the VA, but only one session per month, which is hardly as intensive or consistent as would be expected if Sanchez was experiencing debilitating symptoms. While Dr. Eclerinal noted that Sanchez was prescribed with Prazosin, there are no treating records demonstrating whether Sanchez took the medication, how he responded to it, or whether he was successfully treated. The details supporting Dr. Eclerinal's certification are self-reported subjective symptoms, not examination results, testing, or observed symptoms.

Sanchez referred to his diagnosis from Dr. Weismann for PTSD, but that diagnosis is undisputed, and, in any event, Sanchez was working at the time of Dr. Weismann's diagnosis. Indeed, Sanchez had worked with his condition for years. Regardless, Dr. Weismann's records were not provided to Aetna during its review of the STD claim.

At the same time, there are no contemporaneous treating records, standard mental health evaluations, or other evidence of the extent and severity of Sanchez's symptoms to establish that Sanchez could not perform the material duties of his occupation as a regional sales manager. No treating mental health physician identified physical or mental restrictions or limitations that would prevent Sanchez from performing the essential duties of his occupation as a sales manager. What remains is a mere diagnosis of PTSD from the early 1990s with self-reported symptoms exacerbated due to a hostile work environment and certifications from providers who did not treat Sanchez consistently. The evidence provided is insufficient to meet the STD Plan's functional test of disability—that Sanchez cannot perform the material duties of his occupation.

1    Accordingly, the Court concludes that Sanchez fails to satisfy his burden
2 to prove that he meets the definition of disability under the STD Plan.  Based
3 upon the lack of sufficient medical evidence, Sanchez is not entitled to benefits
4 under the STD Plan.  Under the abuse of discretion standard of review, Aetna's
5 decision to deny STD benefits—on the basis that Sanchez failed to meet the
6 definition of disability—was not arbitrary and capricious.  Under the *de novo*
7 standard of review, Aetna's decision to deny STD benefits—on the basis that
8 Sanchez failed to meet the definition of disability—was correct.

9 **C.    The STD Plan Does Not Cover—but Excludes—Coverage for**
10 **Sanchez's Occupational Illness**

11    Even if the medical evidence supported disability, which it fails to do,
12 Sanchez's claim is not covered because it is occupational in nature and is not a
13 global impairment.  Sanchez fails to establish that he cannot perform the
14 material duties of his occupation solely because of a non-occupational illness or
15 injury.

16    The STD Plan covers only "non-occupational" illnesses or injuries.  It
17 covers disability "as a direct result of a significant change in your physical or
18 mental condition caused by a non-occupational illness or injury."  It specifically
19 excludes "occupational" illness or injury, which it defines as an injury or illness
20 that:

21    • arises out of (or in the course of) any activity in connection with
22        employment or self-employment whether or not on a full-time basis; or
23    • results in any way from an illness or injury which does.

24 Thus, the STD Plan's definition of an occupational illness or injury is broad, as
25 it encompasses maladies arising out of, or in the course of, employment and
26 because it uses the terms "***any*** activity ***in connection*** with employment
27 [emphasis added]."  The definition goes further, to include "results in any way"
28 from illnesses or injuries that arise out of or in the course of employment.

Here, it is undisputed that Sanchez completed his military service in 1994 and that he began working for ITW in 2011. Sanchez alleges that he was first diagnosed with PTSD in July of 2016, when he was seen at the VA. He also asserts that his PTSD was triggered by a hostile work environment. Those undisputed facts demonstrate that his illness arose in connection with his employment.

Moreover, even if Sanchez's PTSD was a latent condition that pre-existed his employment, it still would not be covered under the STD Plan. The rule for occupational injuries is that if a worker's disability—although arising from a pre-existing non-industrial condition—was brought on by any strain or excitement incident to employment, then industrial liability still exists, since acceleration or aggravation of a pre-existing disease is an injury in the occupation causing such acceleration. *See Guerra v. Workers' Compensation Appeals Board*, 246 Cal. App. 4th 1301 (2016) (death from preexisting tuberculosis condition that was aggravated by exertion from work constituted occupational injury). As counsel for Hartford noted at the trial, one reason behind the STD definition is that the insurance company does not want an insured to make an STD claim if and when the insured can make a claim for workers' compensation. If the worker's compensation claim is declined, then the insured can make an STD claim.

At the least, Sanchez's hostile work environment aggravated his latent/pre-existing PTSD to the point where he could no longer work. The administrative record reflects that when Sanchez applied for benefits under the STD Plan, it was related to "a hostile work environment . . . ." Nurse Practitioner Espinoza reported that Sanchez's "supervisor [was] singling him out—making him loose [*sic*] his confidence. Pt feels weak. He feels that his supervisor is trying to make him quit." As a result, Sanchez felt that he could not "do the job anymore," and, thus, he filed for disability. Sanchez repeatedly

made clear throughout the STD claim that his specific work environment triggered or exacerbated his PTSD, leading to his disability.  Indeed, both Sanchez and his providers consistently attributed the exacerbation of Sanchez's symptoms to his hostile work environment.

Aetna asked for records to demonstrate that Sanchez's condition resulted from a global impairment, because, according to the documentation received, Sanchez's symptoms were work-specific, but no such documentation was ever provided.  Sanchez's claimed disability is not "as a direct result of a significant change in [his] physical or mental condition caused by a non-occupational illness or injury."  Instead, Sanchez claims disability for an occupational illness or injury that is not covered under the terms of the STD Plan.  Because the terms of the STD Plan do not cover—and, indeed, exclude—claims for occupational illnesses and injuries, Sanchez is not entitled to benefits under the STD Plan.  Accordingly, Sanchez's claim for benefits under the STD Plan is **DENIED**.

## D.     The Post-STD Documents That Sanchez Seeks to Admit Are Inadmissible, and They Do Not Prove Disability

Sanchez seeks to admit four documents:  (1) Dr. Weismann's record; (2) a questionnaire completed by Dr. Michael Gould, Psy. D., who treated Sanchez at the VA;  (3) a Social Security Administration award letter; (4) and a personal statement (collectively, the "Extrinsic Documents") to support his STD claim.  Those Extrinsic Documents were either unavailable, nonexistent, or not provided to Aetna during its administrative review of the STD claim.  Thus, Aetna could not have considered the Post-STD records in its review of the STD claim.  Those documents are extrinsic to the administrative record that closed on November 12, 2019.

Even under *de novo* review, subject to limited exceptions, evidence extrinsic to the administrative record is inadmissible.  *See Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1026-27 (4th Cir. 1993).  "A district court

-18-

should not take additional evidence merely because someone at a later time comes up with new evidence." *Id.* at 1025.  Extrinsic evidence should be considered only under exceptional limited circumstances showing that the evidence is clearly necessary to conduct an adequate review of the administrator's decision.  *See id.*; *Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995)).  Even when exceptional circumstances exist, a court has discretion to admit or exclude extrinsic evidence.  *See Clifton v. Connecticut General Life Ins. Co.*, 2020 WL 6498964, at *3 (D. Ariz. Oct. 21, 2020).

Here, exceptional circumstances supporting the admission of the Extrinsic Documents do not exist.  The Extrinsic Documents are not clearly necessary to adjudicate Sanchez's STD claim.  The STD claim underwent a full and fair administrative review, and the administrative record is fully developed. Aetna repeatedly specified the medical information required to support the claim, and it gave Sanchez and his providers multiple opportunities to submit additional records and information.  There is no complex, disputed medical or other issue, or ambiguity in the records, requiring extrinsic evidence.  The Extrinsic Documents are therefore inadmissible.  The Court **OVERRULES** Sanchez's objection to the STD Administrative Record submitted by Hartford and **DENIES** Sanchez's request to augment the administrative record.

Even if admissible, however, the Extrinsic Documents do not prove disability from a non-occupational illness or injury.  Dr. Weismann's VA disability benefits questionnaire is dated July 13, 2016—while Sanchez was working—and, therefore, it does not reflect Sanchez's condition and level of functionality from 2019 onward.  Dr. Gould's October 10, 2019, disability benefits questionnaire duplicates Dr. Eclerinal's earlier conclusion of social and occupational impairment that Aetna already considered, and, like Dr. Eclerinal,

Dr. Gould failed to provide treating records or examination results.  Dr. Gould's certification of disability was issued pursuant to VA standards.  It was not based upon the STD Plan's definition of disability, and it is, therefore, not dispositive.  Moreover, both Dr. Weismann and Dr. Gould based their conclusions on Sanchez's self-reported symptoms and noted that Sanchez appeared well-oriented.  Sanchez's thinking was "rational and linear."  Both indicate that Sanchez's PTSD was exacerbated by a hostile work environment.

The Social Security disability benefits award letter provides no medical evidence, because it does not include the examination report upon which the award is based or the time period considered.  The award, which is not based upon the STD Plan's definition of disability, is not dispositive.  Finally, Sanchez submitted his personal statement of his background, his work, and the duties that he cannot perform, such as travel and interacting with people.  The statement, however, is simply a statement of claim; it is not evidence of medical restrictions and limitations.

**E.   Aetna's Denial of Benefits Under the STD Plan Was Not an Abuse of Discretion; It Was Reasonable and Correct**

Aetna's decision to deny Sanchez benefits under the STD Plan was not arbitrary and capricious.  Aetna did not abuse its discretion in denying Sanchez benefits under the STD Plan.  Under a *de novo* standard of review, Aetna's decision to deny Sanchez benefits under the STD Plan was correct.

**F.   Sanchez Fails to State a Justiciable Claim Under the LTD Plan**

**1.   Sanchez's Claim is Unripe**

"Absent a decision by the plan administrator, district courts have no jurisdiction to make an assessment of a beneficiary's eligibility for benefits." *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 118 (2d Cir. 2002).  Adjudication is premature when a "benefits question" has "not yet ripened into a case or controversy."  *Id.* at 118 (citing *Jones v. Unum Life Ins. Co. of America*, 223 F.3d

130, 140-41 (2nd Cir. 2000)).  Under ERISA, claims administrators are to make factual determinations in the first instance.  *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long-Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996).  The Court is not to act as the "substitute plan administrator" for the factual determination of whether Sanchez is entitled to LTD benefits under plan terms.  *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 (9th Cir. 1993), *abrogated on other grounds by Saffron v. Wells Fargo Long-Term Disability Plan*, 522 F.3d 863, 872 n.2 (9th Cir. 2008).

Here, Sanchez's claim fails under the ripeness doctrine.  The administrator has not rendered an adverse LTD benefit determination.  Sanchez never reported a claim to Hartford as required by LTD Plan procedure.  According to the LTD Plan, no claim determination was possible.  By statute, administration of plan benefits in accordance with claim review procedure is a duty of Hartford , as the designated LTD Benefits Administrator.  *See* 29 U.S.C. § 1104(a)(1)(D); *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006); *Silk v. Metropolitan Life Ins. Co.*, 477 F. Supp. 2d 1088, 1091-92 (C.D. Cal. 2007).  Claim review is not a duty of the Court, and it is thus improper for Sanchez to seek a legal adjudication of his entitlement to LTD benefits on a claim that he did not file.

### 2.    Sanchez Failed to Exhaust His Administrative Remedies Under the Plan

An ERISA claimant "must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court."  *Diaz v. United Agr. Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995); *see also Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980).  "[F]ederal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and . . . as a matter of sound policy they should usually do so."  *Amato*, 618 F.2d at 568.  The exhaustion requirement "enables the employer, or its plan, to obtain

full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision . . . .  The process is of substantial benefit to reviewing courts because it gives them a factual predicate upon which to proceed." *Brown v. J.B. Hunt Transport Services*, 586 F.3d 1079, 1085 (8th Cir. 2009) (citing *Black v. Danka Corp.*, 335 F.3d 790 (8th Cir. 2003)).

The Ninth Circuit explains several policy considerations for enforcing the exhaustion requirement as a general rule, including:  "reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a non-adversarial method of claims settlement, . . . and a proper reliance on administrative expertise." *Diaz*, 50 F.3d at 1483.  ERISA plaintiffs fail to exhaust administrative remedies when they do not submit an LTD claim, even when the same insurer administered the STD claim.  *See, e.g.*, *Walsh v. Life Ins. Co. of North America*, 2007 WL 2343657 (D. Mass. Aug. 15, 2007); *Leggett v. Provident Life and Accident Ins. Co.*, 2004 WL 291223 (M.D. Fla. 2004); *see also Taylor v. Prudential Ins. Co. of Am.*, 954 F. Supp. 2d 476, 485 (S.D. Miss. 2013) (holding that "given the absence of the administrative record, this Court is not in a position to award her LTD benefits if she were to prevail on her claim for STD benefits"); *Norberry v. Life Ins. Co. of N. Am.*, 2008 WL 5170404 (M.D. Tenn. Dec. 10, 2008) (dismissing the plaintiff's LTD claim because she did not file an LTD benefit claim and there was no administrative record to review).

Sanchez failed to exhaust his administrative remedies under the terms of the LTD Plan.  He never submitted an LTD claim to the claim administrator, and, therefore, he failed to avail himself of the LTD Plan's administrative process and procedures.  With no reported LTD claim and proof of loss, Hartford could not have rendered a benefit decision.  Consequently, there is no administrative record or administrative determination under ERISA for this

1  Court to review.  Accordingly, the Court finds that it lacks jurisdiction to decide
2  the LTD claim.

3  **3.  The Futility Exception Does Not Apply**

4  The Ninth Circuit recognizes a narrow exception to the exhaustion
5  requirement:  when pursuing a claim administratively would be futile.  *See Diaz*,
6  50 F.3d at 1483.  Futility, however, must be certain and "bare assertions of
7  futility are insufficient to bring a claim within the futility exception."  *Id.* at
8  1485; *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002).
9  The burden is on the plaintiff seeking an excuse for failure to comply with a
10  plan's administrative procedure.  *See Zhou*, 295 F.3d at 679.  The futility
11  exception does not apply when a claim denial is founded on the employee's
12  failure to comply with a plan's administrative requirements.  *See Diaz*, 50 F.3d
13  at 1485-86.  The denial of an STD claim does not render pursuit of an LTD
14  claim futile.  *See Gambino v. Arnouk*, 232 F. App'x 140 (3rd Cir. 2007); *Messick
15  v. McKesson Corp.*, 640 F. App'x 796 (10th Cir. 2016).

16  In *Grenell v. UPS Health and Welfare Package*, 390 F. Supp. 2d 932
17  (C.D. Cal. 2005), another court in this district rejected a plaintiff's futility
18  argument and found that the plaintiff offered "no such excuse for his complete
19  failure to appeal the denial of his claim."  *Id.* at 935.  Here, Sanchez offers no
20  reasonable excuse for his complete failure to follow the prescribed
21  administrative procedure of the ITW LTD Plan.  Sanchez cannot, through
22  hypothetical assertions, meet his burden to establish with certainty that Hartford
23  would deny his LTD simply because his STD claim was denied.

24  The STD Plan and the LTD Plan are separate and distinct plans with
25  different terms, conditions, and limitations.  A claim that is not payable under
26  the STD Plan may nevertheless be payable under the LTD Plan.  Sanchez does
27  not meet his burden to prove that an LTD claim was futile.  Pursuing an LTD
28  claim was not futile.  The futility exception does not apply and does not excuse

Sanchez's failure to exhaust administrative remedies under the LTD Plan. Accordingly, Sanchez's claim for benefits under the LTD Plan is **DENIED without prejudice**.

## IV.  CONCLUSION

For the foregoing reasons, the Court will enter Judgment in favor of Hartford and against Sanchez.

**IT IS SO ORDERED.**

Dated: _September 2, 2022_

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE